**Karen HAMMOND, Plaintiff–Appellant,**

**v.**

**Waldo BALES and Roger Hammond, Defendants–Appellees.**

No. 86–1638.

United States Court of Appeals, Tenth Circuit.

April 8, 1988.

William J. Fleischaker of Roberts, Fleischaker & Scott, Joplin, Mo., for plaintiff-appellant.

Sue Wycoff, Asst. Atty. Gen. (Michael C. Turpen, Atty. Gen., with her on the brief) Oklahoma City, Okl., for defendant-appellee Waldo Bales.

Alfred K. Morlan of Jones, Givens, Gotcher, Bogan & Hilborne, Tulsa, Okl., on the brief, for defendant-appellee Roger Hammond.

Before MOORE and BALDOCK, Circuit Judges, and O'CONNOR, District Judge.[*]

---

* Honorable Earl E. O'Connor, United States District Court Chief Judge for the District of Kansas, sitting by designation.

JOHN P. MOORE, Circuit Judge.

This is an appeal from an order of the district court entering summary judgment for defendants in a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Karen Hammond, former daughter-in-law of defendant Roger Hammond, claims she was unconstitutionally deprived of her right to sue Mr. Hammond for malicious prosecution. Plaintiff argues that criminal charges against her instigated by Mr. Hammond were dismissed by defendant Waldo Bales, a state prosecutor, only when she agreed to release Mr. Hammond from civil liability. The district court entered summary judgment in favor of defendants, holding that absolute immunity protected defendant Bales from suit. The court also found there did not exist a sufficient nexus between the conduct of defendants Bales and Hammond to find the latter acted under color of state law. On appeal, plaintiff alleges: 1) Mr. Bales' demand for a release of civil liability was not "an advocatory" function entitling him to absolute immunity; and 2) because Mr. Bales is not immune from suit, summary judgment should not have been entered in favor of Mr. Hammond. We disagree with plaintiff's contentions and uphold the district court's judgment for defendants.

## I.

During the course of her marriage dissolution with Mr. Hammond's son, plaintiff entered her former home and removed items allegedly belonging to defendant Hammond. Mr. Hammond subsequently initiated and defendant Bales filed state criminal charges against plaintiff. Following a probable cause hearing at which the charge was bound over for trial, Mr. Bales agreed to dismiss the criminal case in exchange for plaintiff's waiver of the right to assert civil liability against Mr. Hammond. The record discloses Mr. Bales made the determination to offer the conditional dismissal for a number of legitimate policy reasons. The trial court found Mr. Bales' actions to be wholly within the scope of his prosecutorial function and accorded him absolute immunity.

The Supreme Court first addressed the issue of prosecutorial immunity in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler*, plaintiff sued a state prosecutor for using perjured testimony and suppressing important evidence during his murder trial. The Court asked whether an attorney could be sued under § 1983 for actions within the scope of his duties in initiating and pursuing a criminal prosecution. In holding the prosecutor absolutely immune, the Court decided that the prosecutor's immunity in § 1983 actions should mirror the absolute immunity from tort liability under the common law with respect to the conduct of prosecutions. The Court emphasized the dangers of harassment by unfounded litigation which could divert attention from the prosecutor's duties and affect his independence in decision making. The Court also feared suits against prosecutors would amount to a virtual retrial of criminal offenses in a new forum.

*Imbler* expressly limited the scope of absolute immunity to those activities of a prosecutor which are "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. The Court noted, however, that a prosecutor's advocatory duties extend far beyond actually trying a case. According to the Court,

A prosecuting attorney is required, constantly, in the course of his duty [as an advocate] ... to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, [and] whether to dismiss an indictment against particular defendants.

*Id.* at 431 n. 33, 96 S.Ct. at 995 n. 33.

Since *Imbler*, courts have broadly defined the scope of a prosecutor's absolute immunity. For example, in *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), this court stated that the decision not to prosecute criminal charges is similar to the decision to prosecute and should therefore be protected by absolute immunity. Courts have also held that a

prosecutor's activities in a plea bargaining context warrant absolute immunity. *E.g.,* *Taylor v. Kavanagh,* 640 F.2d 450, 453 (2d Cir.1981). The Second Circuit later extended the scope of this immunity to protect an alleged breach of a prosecutor's promise not to prosecute. *See Powers v. Coe,* 728 F.2d 97, 104 (2d Cir.1984).

Most significantly, several recent decisions have held that absolute immunity attaches in certain situations to a prosecutor who offers to drop criminal charges if the arrestee agrees to dismiss his action for damages. In *Town of Newton v. Rumery,* — U.S. ——, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), plaintiff had signed an agreement dismissing charges of witness tampering against him in connection with the indictment of a friend for sexual assault of the witness. In return, the agreement provided that plaintiff would not file a § 1983 action against the town or any of its officials for his arrest. Reversing the First Circuit which had adopted a per se rule invalidating all release-dismissal agreements, the Court rejected the argument that all such agreements are inherently coercive. Rather, it emphasized the plaintiff had voluntarily entered into the agreement and the prosecutor had legitimate reasons for not pursuing the case, including the protection of the victim from the public scrutiny of a criminal and civil trial. The court also examined whether "the possibility of abuse is clearly mitigated [by] the release-dismissal agreement [being] executed under judicial supervision." *Id.* 107 S.Ct. at 1197 (O'Connor, J., concurring). *See also McGruder v. Necaise,* 733 F.2d 1146 (5th Cir.1984) (district attorney's offer to drop criminal charges in return for plaintiff's relinquishing his action for damages resulting from a fire in the state prison was proper under *Imbler*).

We have also examined release-dismissal agreements on a case-by-case basis. In *Lusby v. T.G. & Y. Stores,* 749 F.2d 1423 (10th Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985), we excoriated the defendants' use of such an agreement. The defendant store and several of its employees instituted groundless charges of petty larceny and assault against the plaintiffs, which they refused to drop in order to encourage plaintiffs to sign a release of civil liability. Moreover, the defendants kept certain exculpatory material from the prosecutor to buy time to negotiate with plaintiffs. Emphasizing defendants' unscrupulous actions, we wrote that "when private parties or public officials use criminal complaints to coerce a release of civil liability from injured persons, this action, as a malicious prosecution, is egregious and qualifies as a deprivation of due process that violates the Fourteenth Amendment." *Id.* at 1431.

■ The instant case presents a markedly different set of circumstances from those we considered in *Lusby.* First, there is substantial evidence that Ms. Hammond voluntarily entered into this agreement. According to the testimony, Ms. Hammond's counsel approached Mr. Bales about filing a motion to dismiss the criminal charges. Mr. Bales presented his concerns regarding a future civil suit against Mr. Hammond to Ms. Hammond's counsel, who then obtained consent to release these claims from his client and drafted the agreement. Thus, it is evident that Mr. Bales neither manipulated nor coerced plaintiff to give up civil claims in exchange for dismissal of the criminal charge.

Furthermore, Mr. Bales sought this release for a number of legitimate objectives. He testified that he decided not to pursue the prosecution of Ms. Hammond partly because of the large number of cases on the jury docket, many of which warranted more immediate and serious concern. Mr. Bales also considered the cost of a trial, the probability of successful prosecution, and the excellent ability of the defense attorney. A lengthy trial would be particularly onerous, he thought, because it would involve a number of government officials, including himself, as witnesses. These factors are legitimate considerations directly related to Mr. Bales' prosecutorial responsibilities. His decision to pursue the agreement was not a relinquishment of his public duty but a calculation designed to enhance his effectiveness and avoid unnecessary waste. His choice, therefore, was consonant with the public's interest in seeing its laws faithfully executed.

Finally, there existed several safeguards to protect against prosecutorial abuse. This is not a case in which the state created a frivolous charge to suppress a valid civil complaint. Rather, the parties began negotiating for the release only after the state court found probable cause that plaintiff had embezzled Roger Hammond's property and bound her over for arraignment. Also, Oklahoma law prevents a prosecutor from dismissing criminal charges. While the prosecutor may move for dismissal, only the court may dismiss charges, and then only after setting forth the reasons for its decision. *See* Okla.Stat. tit. 22, § 815.[1] Thus, the parties in the instant case executed the release-dismissal under judicial supervision, which mitigates the possibility of abuse. *See Rumery*, 107 S.Ct. at 1197 (O'Connor, J., concurring).

## II.

Plaintiff also claims that Mr. Hammond conspired with Mr. Bales to deprive her of the right to pursue her civil claim. For a cognizable § 1983 claim to be raised, it must be shown that the defendant acted under color of state law. *E.g., Norton v. Liddel*, 620 F.2d 1375, 1379 (10th Cir.1980). This court has stated several times that when a plaintiff in a § 1983 action attempts to assert the necessary state action by implicating a state official in a conspiracy with private defendants, the pleadings must specifically present facts showing agreement and concerted action. Conclusory allegations without supporting facts are insufficient. *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983); *Clulow v. Oklahoma*, 700 F.2d 1291, 1303 (10th Cir.1983).

The standard for finding state action is even stricter when the state officials allegedly involved in the conspiracy are immune from suit. Several circuits have held that a § 1983 claim for relief may never be brought against a private person alleged to have conspired with an immune state official because a valid claim cannot be made against anyone acting under color of state law. *E.g. Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir.1979). We have held, however, that the immunity of the state official should not provide a windfall defense to the private conspirator. *Norton v. Liddel*, 620 F.2d at 1379. The plaintiff must demonstrate "the existence of a significant nexus or entanglement between the absolutely immune state official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy." *Id.* at 1380.

Although caution is advised in a pretrial disposition of conspiracy allegations in civil rights actions, *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir.1980), we conclude plaintiff has failed to show a significant nexus between defendants Hammond and Bales. We have rigorously applied this standard in the past. In *Sooner*, 708 F.2d at 512, we rejected as conclusory plaintiff's claims that state action existed to sue private conspirators because he failed to allege facts showing they acted in concert with immune state court judges. Instead, *Sooner* merely pointed out that one of these judges who was aware of the conspiracy later joined a law firm connected with the conspirators. And in *Shaffer v. Cook*, 634 F.2d 1259 (10th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981), this court rejected plaintiff's theory that frequent communications between attorneys and the immune judge before every hearing indicated they were conspiring to deprive him of his right to a fair trial.

Plaintiff in this case has also failed to present sufficient evidence to prove a conspiracy. In response to Hammond's summary judgment motion, plaintiff only filed an affidavit stating that Mr. Hammond had told her he was good friends with Mr. Bales. Even if the men were good friends, which the defendants dispute, the relationship alone does not demonstrate the existence of a conspiracy. Mr. Hammond did inform Mr. Bales of his fear of being sued by the plaintiff, but Mr. Bales' consideration of this apprehension before he decided

---

1. This statute states:
   The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes.

to obtain a release-dismissal agreement does not support an inference of concerted activity by the defendants. Plaintiff must also show the existence of a conspiratorial agreement. The record indicates that Mr. Hammond never asked Mr. Bales to dismiss charges against plaintiff in return for a release. Moreover, Mr. Bales agreed to dismiss criminal charges only after being approached by plaintiff's counsel, who then obtained consent from his client and drafted the release-dismissal agreement. We conclude that plaintiff failed to present evidence showing defendant Hammond conspired with defendant Bales to deprive her of her constitutional rights. We therefore hold the district court correctly determined that Roger Hammond may not be held liable under § 1983.

AFFIRMED.