34 F.3d 1076
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 David SACK, Plaintiff-Appellant,
v.
Gary HUGGINS; Gerald Hunter; Dr. Page; Gregory N. Combs;
Carl Longmire; Dennis Shook; Skip Hendricks; Larry
Langley; Bruce Sewell; Elmer Shephard; Johnny Cannon;
Marilyn Cole; Diana Jones; Richard McLaughlin; Wagoner
County, Defendants-Appellees.
 No. 93-7108.
 United States Court of Appeals, Tenth Circuit.
 Aug. 1, 1994.
 
 Before LOGAN, SETH, and BARRETT, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Appellant David Lee Sack, a state prisoner in Oklahoma, filed a pro se civil rights complaint against fifteen defendants, alleging that they conspired to falsely prosecute and convict him of crimes by denying him due process and necessary medical treatment, manufacturing false evidence and testimony, and coercing him into pleading guilty. The district court found that Sack failed to state a claim against fourteen of the defendants. The court also dismissed the claims against the fifteenth defendant, defendant Page, because he had not been served with the complaint. Sack now appeals. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 
 3
 The crimes for which Sack has been convicted stem from two automobile accidents. After the first accident in 1988, Sack pleaded guilty to felony driving under the influence of alcohol. The second accident, which occurred in 1990, resulted in the death of the driver of another vehicle. Based on the mixture of alcohol and drugs in his blood after the accident, Sack was charged with second degree murder. He pleaded guilty to that charge and also to knowingly possessing an Oklahoma driver's license with a photograph of a person other than the named person.
 
 
 4
 At issue on appeal is whether Sack stated 42 U.S.C.1983 claims against (1) Wagoner County and its sheriff and two deputies, (2) the judges who presided over his 1988 and 1990 criminal proceedings (Nos. CRF-88-184 and CRF-90-24), (3) the three Wagoner County district attorneys who prosecuted the crimes at issue, (4) an Oklahoma highway patrol officer, (5) the three private attorneys who represented Sack in the 1988 and 1990 criminal proceedings, and in his subsequent state post-conviction actions, and (6) a state court clerk.
 
 
 5
 Briefly stated, these defendants allegedly participated in an elaborate conspiracy to wrongfully convict Sack of second degree murder for the fatality that resulted from his 1990 accident. As for the underlying circumstances of that accident, Sack appears to concede only that he was involved in the accident and that his blood-alcohol content after the accident was .08. He disputes that he was the driver of his vehicle. Further, he aggressively challenges the propriety of the state's use of a blood test which showed the presence of Phentermine Hydrochloride, in addition to alcohol. Sack claims that to coerce him to plead guilty to second degree murder, defendants trumped up false testimony, evidence, and charges against him in Nos. CRF-88-184 and CRF-90-24, and, further, deprived him of medical treatment, due process, and equal protection.
 
 
 6
 We review the district court's dismissal for failure to state a claim de novo, accepting "all well-pleaded allegations of the complaint as true and ... [construing] them in the light most favorable to the plaintiff." Williams v. Meese, 926 F.2d 994, 997 (10th Cir.1991). A dismissal for failure to state a claim will be upheld "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991).
 
 Sheriff Shephard and Deputy Cannon
 
 7
 We affirm the dismissal of Sack's claims against defendants Elmer Shephard and Johnny Cannon, who allegedly deprived Sack of necessary medical treatment before his suppression hearing and trial. As the district court concluded, Sack unsuccessfully made the same allegations against these same defendants in Sack v. Lowder, CIV 90-554-S (E.D. Okla. Sept. 17, 1991), affirmed, Nos. 91-7082, 91-7111 (10th Cir. Jan. 6, 1992). Furthermore, we refuse to consider Sack's argument that Sack v. Lowder should not be given preclusive effect because of a jurisdiction problem. We have already rejected that same argument in Sack v. St. Francis Hospital, No. 93-5096 (10th Cir. Jan. 25, 1994).
 
 Judges
 
 8
 Sack alleged in his complaint that state court judges Lawrence Langley and Bruce Sewell deprived him of his constitutional rights during various stages of his criminal proceedings and post-conviction action. Judge Langley allegedly conspired with the Wagoner County district attorney, Gary Huggins, and a private attorney, Dennis Shook, to appoint Shook as Sack's attorney after his 1990 accident, so that Shook could "misrepresent, hinder and obstruct the course of justice." Sack maintains that he never requested an appointed attorney. Judge Sewell allegedly conspired with other defendants to coerce Sack to plead guilty to the 1990 charges. Specifically, Sack claims that Judge Sewell ordered him transported to the Wagoner County jail well before his trial, so that he would receive inadequate medical treatment and would agree to plead guilty. Also, Judge Sewell allegedly threatened that he would not honor the concurrent sentencing provisions of the plea agreement in No. CRF-88-184. Sack also claims that Judge Sewell acted without jurisdiction in No. CRF-90-24.
 
 
 9
 Related to his post-conviction action, Sack accuses Judge Sewell of conspiring with Richard McLaughlin, a private attorney appointed by Judge Sewell to allegedly obstruct, damage, and misrepresent Sack's case. Sack claims Judge Sewell deliberately refused to allow Mclaughlin to withdraw thereby causing a procedural default.
 
 
 10
 We agree with the district court that absolute immunity protects Judges Langley and Sewell from damages liability. Judges enjoy absolute immunity from damages liability under 1983 for their judicial acts. Pierson v. Ray, 386 U.S. 547, 554 (1967). An act is "judicial" if "it is a function normally performed by a judge." Stump v. Sparkman, 435 U.S. 349, 362 (1978) "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Id. at 356-57 (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)).
 
 
 11
 Here, except for Sack's allegations that the judges conspired with other defendants to obstruct justice so that he would be wrongfully convicted, the actions of which Sack complains are ones a judge normally performs. We reject Sack's arguments that the judges acted in clear absence of jurisdiction by appointing counsel without his request, and by failing to arraign him in No. CRF-90-24. Further, we hold that the district court properly disregarded Sack's bald, conclusory allegations that the judges conspired with other defendants to falsely convict him. See Mitchell v. King, 537 F.2d 385, 386 (10th Cir.1976)("A motion to dismiss under Fed. Rules Civ. Proc. rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").
 
 District Attorneys
 
 12
 Sack sued three Wagoner County district attorneys, Gary Huggins, Gerald Hunter, and Gregory Combs, who prosecuted him, or at least supervised his prosecution in Nos. CRF-88-184 and CRF-90-24.
 
 
 13
 Sack alleges that defendant Huggins failed to investigate whether Sack was the driver in the 1990 accident, or whether officers had arrested Sack or obtained his consent before withdrawing his blood and seizing his "diet pill" and medical records. Further, Sack claims that Huggins advised police officers to: obtain his consent after they had withdrawn his blood; submit a substitute diet pill to the lab, since the diet pill that was seized from Sack was destroyed; and manufacture evidence of a false driver's license and forged check so that Sack could be charged with additional felonies and would be intimidated into pleading guilty. As evidence that Huggins falsely prosecuted him, Sack maintains that Huggins supported the state's case with inadmissable evidence, suppressed and lied about exculpatory evidence, lied to Judge Sewell about the expected testimony of witnesses, and threatened to disregard the concurrent sentencing provisions from Sack's plea in No. CRF-88-184.
 
 
 14
 Sack also maintains that Huggins conspired with Judge Langley and Defendant Shook to have Shook appointed as his attorney so that Shook could misrepresent Sack's case, obstruct justice, supply Huggins with confidential information, and otherwise cooperate with Huggins and the defendant judges to wrongfully convict Sack. Sack claims that the conspiracy between Huggins, Shook, and the judges included agreements to deny Sack's motion to suppress his blood test and to cause Sack to be held in Wagoner County jail without adequate medical care before his suppression hearing and his trial, in an effort to coerce his guilty plea. Sack adds that Huggins conspired with defendant Jones, a state court clerk, so that Jones would delay the filing of Sack's post-conviction actions.
 
 
 15
 Sack's theory of liability against district attorneys Combs and Hunter is their alleged negligence in hiring, training, and supervising Huggins. Sack also maintains that Hunter personally coerced him to plead guilty in No. CRF-88-184.
 
 
 16
 The district court found that the facts, as alleged by Sack, showed that the defendant district attorneys were acting within the scope of their authority, and, therefore, they were entitled to absolute prosecutorial immunity under Imbler v. Pachtman, 424 U.S. 409 (1976). Alternatively, the district court reasoned that the allegations should be dismissed as conclusory.
 
 
 17
 "A prosecutor is entitled to absolute immunity when his activities are intimately associated with the judicial phase of a criminal process." DiCesare v. Stuart, 12 F.3d 973, 977 (10th Cir.1993)(citing Imbler, 424 U.S. at 430). Absolute immunity does not attach, however, to a prosecutor's administrative and investigatory activities "that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley v. Fitzsimmons, 113 S.Ct. 2606, 2615 (1993). We cannot agree with the district court that absolute immunity protects all the alleged activities of the defendant district attorneys. For example, Sack appears to allege that during the preliminary investigation, defendant Huggins advised police to manufacture false evidence--an act protected only by qualified immunity. Id. at 2616-17. It is unnecessary to resolve the qualified and absolute immunity issues, however, because, we can affirm the dismissal of all claims against the district attorneys on other grounds. United States v. Corral, 970 F.2d 719, 726 n. 5 (10th Cir.1992)(appellate court may affirm for any reason supported by the law and record).
 
 
 18
 At their core, Sack's allegations against the district attorneys sound in malicious prosecution. Cf. Anthony v. Baker, 955 F.2d 1395, 1399 (10th Cir.1992)(action for malicious prosecution "attempts to hold the complaining witness 'liable for his role in initiating a baseless prosecution.' " (citation and footnote omitted)). "[T]he federal courts have adopted the common law rule that the termination of the underlying criminal proceeding in favor of the accused is an essential element of a 1983 malicious prosecution claim." Brummett v. Camble, 946 F.2d 1178, 1183-84 (5th Cir.1991)(collecting cases), cert. denied, 112 S.Ct. 2323 (1992); see also Robinson v. Maruffi, 895 F.2d 649, 654-55 (10th Cir.1990)(section 1983 action for malicious prosecution accrues when underlying criminal action terminates in plaintiff's favor). The criminal prosecutions of which Sack complains have not terminated in his favor. He pleaded guilty in Nos. CRF-88-184 and CRF-90-24, and his convictions have not been disturbed on direct appeal, nor on petitions for state and federal habeas relief. Under these circumstances, claims of malicious prosecution are premature. Heck v. Humphrey, 62 USLW 4594, 4597, 1994 WL 276683 (U.S. June 24, 1994)(No. 93-6188)(holding that prisoners may not recover damages under 1983 "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the conviction or sentence has been "reversed, expunged, invalidated or impugned by grant of a writ of habeas corpus.")
 
 Highway Patrol Officer
 
 19
 Officer Skip Hendricks allegedly conspired with defendant Huggins to coerce Sack to plead guilty to second degree murder. Specifically, Sack claims that Hendricks obtained a fake driver's license that had been confiscated from Sack after his 1988 accident and, then, Hendricks falsely reported that the license was discovered in Sack's car after his 1990 accident. Based on the false report, defendant Huggins charged Sack with an additional felony--carrying an Oklahoma driver's license with a photo other than the named person. Sack claims that Hendricks perpetuated the false prosecution for the driver's license by lying about the discovery of the evidence at the preliminary hearing. All of this allegedly pressured Sack to plead guilty to second degree murder.
 
 
 20
 The district court appropriately dismissed the claims against Hendricks. To the extent Sack intends to hold Hendricks liable for his role in initiating and perpetuating a groundless prosecution for the driver's license charge--a claim of malicious prosecution, see Anthony, 955 F.2d at 1399-1401--his claim fails because the criminal proceeding about which he complains has not terminated in his favor, as discussed previously. The claim that Hendricks conspired to convict Sack of second degree murder was also properly dismissed, as Sack supported the claim only with vague and conclusory allegations. See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir.1992).
 
 Private Attorneys
 
 21
 Sack alleged that his three defense attorneys, Carl Longmire, Richard McLaughlin, and Dennis Shook, conspired with state actors to violate his constitutional rights. The district court dismissed the claims because Sack failed to allege facts showing that the attorneys acted under color of state law. We affirm.
 
 
 22
 It is well settled that when a plaintiff tries to impose 1983 liability on a private defendant based on a conspiracy theory, "the pleadings must specifically present facts showing agreement and concerted action. Conclusory allegations without supporting facts are insufficient." Hammond v. Bales, 843 F.2d 1320, 1323 (10th Cir.1988). When a plaintiff alleges the private defendant conspired with an immune official, "[t]he plaintiff must demonstrate 'the existence of a significant nexus or entanglement between the absolutely immune State official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy.' " Id. (quoting Norton v. Liddel, 620 F.2d 1375, 1380 (10th Cir.1980)).
 
 
 23
 In his complaint, Sack alleged that defendant Longmire, who represented him in No. CRF-88-184, conspired with defendants Hunter and Shook to coerce him to plead guilty to felony driving while intoxicated. Specifically, Longmire allegedly failed to advise Sack that the state would not abide by its agreement to recommend sentencing concurrent with any sentence Sack received in No. CRF-90-24 unless Sack also agreed to plead guilty in that case. We conclude that Sack has failed to show an agreement and concerted action between Longmire and Huggins. Further, we reject Sack's argument that Longmire became a state actor by advising him to assist the police in recovering a stolen driver's license machine.
 
 
 24
 Next, we consider Sack's allegations against defendant Shook, who was appointed to represent Sack in No. CRF-90-24. Shook allegedly conspired with Huggins and Judge Langley to wrongfully convict Sack. Shook allegedly deliberately mislead Sack about the relevant law and evidence and failed to raise several Fourth Amendment defenses. As for concerted action between Shook, Huggins, and Judge Langley, Sack alleges that the three agreed to appoint Shook as Sack's attorney, to deny Sack's motion to suppress evidence of the blood test, and to have Sack held in the Wagoner County jail without adequate medical care before his suppression hearing and trial, so that Sack could be persuaded to plead guilty.
 
 
 25
 Initially, we observe that merely by serving as appointed counsel, Shook did not act under color of state law. Polk County v. Dodson, 454 U.S. 312, 319-24 (1981). After carefully examining the complaint, we conclude that Sack cannot prevail on his conspiracy theory because he failed to allege a sufficient nexus between Shook and the immune officials in relation to the steps each allegedly took as part of the conspiracy. Judge Langley's acts of appointing counsel, denying a suppression motion and ordering Sack transferred to a local jail pending his court appearances do not suggest that he participated in a conspiracy to wrongfully convict Sack for second degree murder. Likewise, Huggins' participation in those matters does not show the existence of a conspiratorial agreement. Nor can a conspiratorial agreement be inferred from the alleged friendship between Shook, Huggins, and Langley, Hammond 843 F.2d at 1323, or frequent communications between the three, Shaffer v. Cook, 634 F.2d 1259, 1260-61 (10th Cir.1980), cert. denied, 451 U.S. 984 (1981). Finding no basis for 1983 liability against Shook, we affirm the dismissal of the claims against him.
 
 
 26
 We also affirm the dismissal of Sack's claims against McLaughlin, a private, court-appointed attorney who represented Sack as he sought state habeas relief from his convictions. McLaughlin allegedly conspired with Judge Sewell to damage and obstruct Sack's habeas action. By merely alleging that Judge Sewell hand-picked McLaughlin to represent Sack, Sack has not alleged sufficient facts from which the existence of a conspiratorial agreement could be inferred.
 
 
 27
 Finally, as for Sack's claims against Defendants Marilyn Cole, Diana Jones, and Wagoner County, we affirm the dismissal on grounds that Sack's allegations are conclusory. The judgment of the Eastern District of Oklahoma is AFFIRMED in all respects.
 
 
 28
 The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470