FILED
United States Court of Appeals
Tenth Circuit

**March 2, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DIANA SUE SCHAFFER,

     Plaintiff - Appellant,

v.

SALT LAKE CITY CORPORATION; B.
GAIL CAMERON, in her individual
capacity; ASHLEY HOLLINGSHEAD, in
her individual capacity; TIMOTHY
STUMM, in his individual capacity,

     Defendants - Appellees.

No. 14-4112

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:11-CV-00705-BCW)**
_____

Gregory W. Stevens, Salt Lake City, Utah, for Plaintiff-Appellant.

J. Elizabeth Haws, Salt Lake City Attorney's Office, Salt Lake City, Utah, for
Defendants-Appellees Salt Lake City Corporation and Timothy Stumm. Catherine L.
Brabson, Salt Lake City Attorney's Office, Salt Lake City, Utah, (with her on the brief)
for Defendant-Appellee Ashley Hollingshead. Heather S. White, Snow, Christensen &
Martineau, Salt Lake City, Utah, (with her on the brief) for B. Defendant-Appellee B.
Gail Cameron.

_____

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Plaintiff-Appellant Diana Schaffer appeals the district court's order granting summary judgment on her 42 U.S.C. § 1983 malicious prosecution claims in favor of Defendants-Appellants Ashley Hollingshead, B. Gail Cameron, and Salt Lake City Corp. ("the City"). Schaffer maintains that Hollingshead and Cameron, two City parking enforcement officers, falsely reported to the police that Schaffer hit them with her truck after they issued her a parking ticket. We agree with the district court that the parking enforcement officers did not act under color of state law in reporting the parking incident to the police. Accordingly, we AFFIRM.

## I. BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Cameron and Hollingshead were parking enforcement officers employed by the City. As parking enforcement officers, their duties included issuing citations for local parking ordinances and impounding vehicles. They did not, however, have the authority to detain or arrest citizens.

On November 7, 2008, Schaffer parallel parked a red Dodge pickup truck in a no-parking zone. Hollingshead and Cameron were on duty together at the time, and duly issued her a parking ticket. When Schaffer returned to her truck, she found the parking enforcement officers engaged in an altercation with another citizen, Lisa Garmendia, whose car was also parked in the no-parking zone. Garmendia requested that a police officer respond to her complaints. Schaffer intervened, and requested Cameron's badge number. After briefly contesting her ticket, Schaffer got in her truck to leave.

2

At that time, the parking enforcement officers' car was double-parked alongside the vehicle parked directly in front of Schaffer's truck. Hollingshead was standing in the street near the front driver's side door of the City car; Cameron was standing in the street near the rear driver's side door. Cameron was talking on the phone with police dispatch, relaying Garmendia's request for a police officer to respond to the scene.

Although the exact details of what transpired next are disputed, it is undisputed that Schaffer backed up her truck, pulled away from the curb, and then began to drive forward past the parking enforcement officers and their car. Cameron's on-going phone call to dispatch recorded the incident. The recording captured the parking enforcement officers yelling and pounding on the side of the truck as Schaffer pulled by. Cameron then swore, and said to the dispatcher, "She almost hit me with her car . . . . She tried to run me over with her truck just now. Both of us."

Upon hearing the pounding, Ms. Schaffer stopped briefly. On the recording, Cameron continued, "You almost ran us over. . . . You almost hit both of us with your car." As Schaffer drove away, Cameron narrated, "Yeah, she actually hit the City car and she's driving off right now." Hollingshead then got on the line. When the dispatcher asked her, "So did she hit your vehicle then?" Ms. Hollingshead responded, "She actually hit us and the vehicle. She broke our side mirror." Schaffer, however, denies that her truck struck the parking enforcement officers or their car.

3

Police officer Timothy Stumm was dispatched in response to the parking enforcement officers' report, but arrived after Schaffer and Garmendia had left. Stumm and the parking enforcement officers left the scene in their respective cars and reconvened at a nearby police station, where Cameron and Hollingshead each provided a written witness statement. The statements asserted that Schaffer's truck had struck both parking enforcement officers as well as the City car's outside mirror as Schaffer drove by. Both statements also claimed that Schaffer had intentionally tried to hit the parking enforcement officers, causing them to fear for their safety. In addition, a crime lab technician at the station took pictures of the City car. The pictures showed the car's driver's side mirror bent forward out of position.

Stumm traced the truck's license plate number and visited Schaffer's house, where he found the truck parked in the driveway. He observed handprints and marks on the passenger side of the truck that were consistent with the parking enforcement officers' statements. When Schaffer answered the door, Stumm detained and booked her for aggravated assault.

Schaffer was ultimately charged with aggravated assault and criminal mischief. The charges proceeded to a probable cause hearing and then trial, during which proceedings the parking enforcement officers testified that Schaffer's truck had struck both them and their car. Schaffer was acquitted on all counts.

Schaffer then filed this suit under 42 U.S.C. § 1983, bringing claims against the City and the parking enforcement officers for malicious prosecution and against Stumm for malicious prosecution and false arrest. In this suit, Schaffer denies that

4

her truck struck the parking officers or their car, and contends that the parking officers' allegedly false testimony to the contrary led to her arrest and prosecution without probable cause. The district court granted summary judgment in favor of the defendants. Schaffer appeals that ruling only with respect to the City and the parking enforcement officers.[1]

## II. DISCUSSION

We review a district court's grant of a summary judgment de novo, applying the same legal standard as the district court. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 997 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." Twigg, 659 F.3d at 997.

The two elements of a Section 1983 claim are (1) deprivation of a federally protected right by (2) an actor acting under color of state law. D.T. ex. rel. M.T. v. Indep. Sch. Dist. No. 16, 894 F.2d 1176, 1186 (10th Cir. 1990). Schaffer contends that the parking enforcement officers violated her Fourth Amendment and Fourteenth

[1]Although Schaffer's notice of appeal referred to the entire judgment, she now informs the court that she "has decided not to pursue her appeal against Officer Stumm." (Aplt. Br. at 2 n.2.) Accordingly, we find she has waived any arguments regarding her claims against Stumm. See Phillips v. Calhoun, 956 F.2d 949, 954 (10th Cir. 1992) (stating the "general rule that even issues designated for review are lost if they are not actually argued in the party's brief").

5

Amendment rights by providing false statements and testimony that resulted in her arrest and prosecution. We need not reach that issue, however, because we conclude that the parking enforcement officers were not acting under color of state law when they reported the parking incident. Consequently, Schaffer's Section 1983 claims against the parking officers fail, and with them, her claims against the City.

**A. Color of State Law**

Whether a defendant acted under color of state law is a mixed question of fact and law. How v. City of Baxter Springs, 217 F. App'x 787, 791 (10th Cir. 2007) (unpublished) (citing Duke v. Smith, 13 F.3d 388, 392 (11th Cir. 1994)). Where, as here, the underlying facts are undisputed, the standard of review is de novo. Van Scoten v. C.I.R., 439 F.3d 1243, 1252 (10th Cir. 2006). Schaffer's two theories as to why the parking enforcement officers acted under color of state law are discussed in turn below.

**1. Badge of authority**

Schaffer first contends that the parking officers acted under color of state law because the incident occurred while they were performing their duties as City employees. "Section 1983 was enacted 'to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.'"[2] Haines v. Fisher, 82 F.3d 1503, 1508 (10th Cir. 1996) (quoting

---

[2] In most situations, including where, as here, a Section 1983 action is brought against a state official to vindicate violations of the Fourth and Fourteenth Amendments, the statutory requirement of action "under color of state law" and the "state action" requirement of the Fourteenth Amendment are identical. See Lugar v.

Wyatt v. Cole, 504 U.S. 158, 161 (1992)).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Id. (quoting West v. Atkins, 487 U.S. 42, 49 (1988) (internal punctuation omitted).)  However, "the fact that a tort was committed by an individual employed by the state does not, ipso facto, warrant attributing all of the employee's actions to the state."  Jojola v. Chavez, 55 F.3d 488, 493 (10th Cir. 1995) (internal quotation marks omitted).  Rather, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant."  Id. (quoting D.T. ex. rel. M.T., 894 F.2d at 1188).

Schaffer is unable to establish the requisite nexus between the parking enforcement officers' alleged unconstitutional conduct—namely, lying in witness statements and at the probable cause hearing—and their authority to write parking tickets and impound vehicles.  After all, any citizen can report suspicious activity to the police and repeat that testimony in court; in doing so, the parking enforcement officers exercised no "power possessed by virtue of state law and made possible only because [the parking

Edmondson Oil Co., 457 U.S. 922, 929 (1982); How, 217 F. App'x at 791 (unpublished); Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447 (10th Cir. 1995).

officers were] clothed with the authority of state law."[3] Id. at 492-93 (quoting West, 487 U.S. at 49).

The fact that the parking enforcement officers were on duty when they gave their witness statements does not alone render those statements under color of state law. See Haines, 82 F.2d at 1508 (finding that on-duty cops who staged a prank robbery did not act under color of state law because they "were not using their badges of authority, i.e., their positions as policemen . . . to accomplish the . . . prank"). Neither does the fact that the incident arose from the parking officers' previous exercise of state authority to issue parking tickets satisfy the color of state law requirement. See Hall v. Witteman, 584 F.3d 859, 866 (10th Cir. 2009) ("Even when state employees are performing the services for which the state pays them, they may not be state actors while performing functions that the state has no right to control."); How, 217 F. App'x at 794 (unpublished) ("[T]he proper inquiry is . . . at the time of the alleged constitutional violation. . . .").[4] The record is devoid of any indication that

---

[3] That Cameron was speaking directly to police dispatch at the time of the incident does not change that conclusion. Cameron had called dispatch to deal with an unrelated matter, and the call happened to continue recording as Schaffer drove by and Cameron spontaneously reported the incident with Schaffer. Schaffer puts forth no evidence showing Cameron would not otherwise have chosen to report the incident.

[4] The record does not show that the parking enforcement officers were either trained or required to (1) diffuse disputes that arose during the course of their duties or (2) report any resulting disruptive behavior to the police. Schaffer has advanced no such argument before either this or the district court. Accordingly, we do not pass on the issue. See United States v. Cervini, 379 F.3d 987, 994 n.5 (10th Cir. 2004) ("Arguments not raised by the parties in their briefs are deemed waived."); Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992) (stating the general rule that issues not raised to the district court will not be considered on appeal).

their exercise of that authority extended to their witness statements and testimony. See Jojola, 55 F.3d at 490, 494 (finding that a school janitor who sexually assaulted a student did not act under color of state law because the "complaint [was] devoid of any allegation that [the janitor] enticed [the student] into the classroom through the use or misuse of any state authority he may have possessed"); How, 217 Fed. App'x at 793 and n.5 (unpublished) (finding a city clerk did not wear a "badge of state authority" when she filed a criminal complaint against the plaintiff because "[t]here is no evidence in this case that [she] used her position as city clerk to gain an advantage in the filing of her complaint"). Consequently, the parking officers, although employed by the City, acted in their private capacities when reporting and testifying against Schaffer.

### 2. Joint action

Schaffer next contends that the parking officers engaged in joint action with the police to arrest and prosecute her. Even a private party acts under color of state law if that party is a "willful participant in joint action with the State or its agents." Gallagher, 49 F.3d at 1453 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)). To apply the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Id. There are at least two ways to establish concerted action. Id. at 1454; see also Yanaki v. Iomed, Inc., 415 F.3d 1204, 1212 (10th Cir. 2005) (Holloway, J., dissenting). Under the "conspiracy approach," the "public and private actors [must] share a common, unconstitutional goal." Gallagher, 49 F.3d at 1454 (internal quotation marks omitted).

9

Alternatively, concerted action may be found where "there is a substantial degree of cooperative action between state and private officials" or if there is "overt and significant state participation" in the deprivation of a plaintiff's constitutional rights. Id. (internal quotation marks omitted).

Applying those approaches, we have consistently held that furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law. See, e.g., Benavidez v. Gunnell, 722 F.2d 615, 616, 618 (10th Cir. 1983) (finding no joint action between foster parents who reported their foster children's kidnapping to the police, and the officers who subsequently searched and arrested the alleged kidnappers, because "[t]he mere furnishing of information to police officers does not constitute joint action under color of state law"). Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence. Gallagher, 49 F.3d at 1454 (citing Carey v. Cont'l Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987) (finding that an airport manager's complaint that a pilot on strike was trespassing did not constitute joint action with the police, absent evidence that the responding officer's decision to arrest the pilot after he refused to leave the airport was the result of a "conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power") and Lee v. Town of Estes Park, Colo., 820 F.2d 1112, 1115 (10th Cir. 1987) (holding that  a property owner who mistook flood victims for looters, made a "citizen's arrest," and then asked the police to charge them with

10

trespassing did not engage in joint action with the police, who ultimately booked the plaintiff for a lesser offense, because "[the officer] made the decision as to whether [the plaintiff] should be charged with any offense," and "[t]here is no suggestion in the record . . . that [the officer and plaintiff] were somehow acting as a team")).

Schaffer failed to adduce evidence that the parking officers had any involvement in her arrest and prosecution beyond furnishing information to law enforcement officers.  See Benavidez, 722 F.2d at 618.  There is no indication that the parking officers shared an unconstitutional goal with Officer Stumm or the prosecutor, or that they exerted any influence over the decisions to arrest and charge Schaffer.  See Gallagher, 49 F.3d at 1454.  Rather, the record shows that Stumm made the decision to arrest and book Schaffer only after conducting an independent investigation:  to wit, subsequent to obtaining the witness statements and crime lab photographs, he located the offending truck at Schaffer's home address and observed handprints and marks on the truck consistent with the statements and photographs. Consequently, the parking officers did not engage in joint action with the police when they reported their encounter with Schaffer and testified against her.[5]  See Carey, 823 F.2d at 1404; Lee, 820 F.2d at 1115.

---

[5] Contrary to Schaffer's contention, Lusby v. T.G. & Y. Stores does not require otherwise.  See 749 F.2d 1423, 1427-30 (10th Cir. 1984) judgment vacated on other grounds sub nom. City of Lawton v. Lusby, 474 U.S. 805 (1985)).  Lusby is distinguishable because it involved (1) a private security guard who did not witness the alleged theft, yet purported to arrest the plaintiff anyway; (2) responding officers who failed to conduct any inquiry into probable cause before hauling the plaintiff to jail; and (3) an established police policy of cooperating with local merchant employees regarding shoplifting allegations (including by providing them special

Because Schaffer fails to show that the parking officers acted under color of state law as is required for liability under 42 U.S.C. § 1983, summary judgment in favor of the parking officers was proper.

### B. Municipal Liability

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993). Schaffer asserts underlying violations of the Fourth and Fourteenth Amendments, which require state action. See Gallagher, 49 F.3d at 1446. In this case, "the concepts of state action and under the color of state law are coterminous." How, 217 F. App'x at 791 (unpublished); see supra fn. 2. As such, this Court's finding that the parking officers did not act under color of state law necessarily vitiates Schaffer's claim against the City.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendants.

---

citizen's arrest paperwork that allowed summons to be issued on-site), all of which allowed the private security guard to "substitute his judgment for that of the police." Id.