**Danny BARLOR, Plaintiff-Appellant,**

v.

**Robert PATTON, Director; Tracy Ellis; Oklahoma Department of Corrections, Internal Affairs, Defendants-Appellees.**

### No. 16-6093

United States Court of Appeals, Tenth Circuit.

Filed March 7, 2017

Danny Barlor, Pro Se

John David Hadden, Esq., Chase H. Woodley, Office of the Attorney General for the State of Oklahoma, Oklahoma City, OK, for Defendants-Appellees

Before TYMKOVICH, Chief Judge, PHILLIPS and McHUGH, Circuit Judges.

## ORDER AND JUDGMENT [*]

Gregory A. Phillips, Circuit Judge

Danny Barlor, proceeding pro se, appeals the district court's dismissal of his suit challenging the Oklahoma Department of Corrections's (ODOC) decisions increasing his security points, reducing his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

earned-time credits, and preventing him for earning more credits. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

ODOC uses a "custody assessment scale" to determine, among other things, each prisoner's security status and ability to earn good-time credits.[1] The assessment, performed by an ODOC committee, calculates a prisoner's total "security points." The more security points a prisoner accumulates, the more restrictive his security status (maximum, medium, or minimum). And the more restrictive a prisoner's security status, the harder it is for the prisoner to earn good-time credits.[2]

In 1982, Mr. Barlor was sentenced to 70 years in prison for a conviction of manslaughter. In 2008, having served 26 years on this sentence, the prison determined that he had served all necessary time on that conviction. Unfortunately for Mr. Barlor, he immediately began serving a consecutive sentence of 20 years in prison for a kidnapping conviction from his original sentence. In 1985, he escaped custody for a week, and in 1991, he was found guilty of misconduct based on another escape attempt. Unsurprisingly, Mr. Barlor was placed in a maximum-security facility after the escape and also after the escape attempt. Mr. Barlor alleges that, in 2003, ODOC increased his security points after applying a 1997 ODOC policy to the escape and attempt to escape.

So in 2004, Mr. Barlor knew these same alleged facts when he sought mandamus in state court, claiming the same constitutional violations as he now claims and seeking an order compelling ODOC to reinstate his earned-time credits and previous security level. The state court dismissed that suit because Mr. Barlor had failed to exhaust his administrative remedies. In 2005, Mr. Barlor filed suit in federal court, making ex-post-facto and due-process claims, but the court dismissed that suit because Mr. Barlor had failed to pay the partial filing fee. Mr. Barlor alleges that he no longer needed to prosecute that case after ODOC reinstated his initial medium-security status. In 2013, ODOC placed Mr. Barlor in maximum security again after he allegedly committed a battery. ODOC also contemporaneously reduced 360 earned-time credits. R. at 80. His misconduct conviction for the battery was overturned on appeal. Mr. Barlor is now confined in a medium-security prison.

In his complaint asserting claims under 42 U.S.C. § 1983 and in his response to ODOC's motion to dismiss, Mr. Barlor alleged that ODOC violated his due-process rights in three ways: (1) in 1985, it deprived him of a hearing for his misconduct in escaping, (2) in 1991, it provided him a deficient hearing concerning his attempted escape, and (3) in 2003, it deprived him of a hearing concerning ODOC's decision to "confiscat[e] his earned[-time] credits" under its 1997 policy. R. at 472. He also alleged that ODOC violated his rights under the Ex Post Facto Clause by applying its 1997 policy to his 1985 and 1991 infractions, retroactively increasing his punishment by "arbitrarily tak[ing]" his earned-time credits. R. at 464. He finally alleged that ODOC violated his rights under the Double Jeopardy Clause by placing him in maximum security in 2003 after applying the 1997 policy to his earlier escape-related infractions, and in 2013 after applying

---

1.  Prisoners earn good-time credits for good behavior. Once earned, these time credits deduct time from the total number of days left on a prisoner's sentence.

2.  While in maximum security, prisoners do not earn any good-time credits, and prisoners can potentially lose earned-time credits as a result of misconduct.

the 1997 policy to those infractions combined with his alleged battery. He requested declaratory relief and compensatory damages, but also requested to be credited "all pay lost and time credits" and to have his security status re-evaluated. R. at 10.

The magistrate judge recommended granting summary judgment against Mr. Barlor on his ex-post-facto claim and dismissing his other claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The magistrate judge construed Mr. Barlor's request to restore his earned-time credits as a challenge to the execution of his sentence, redressable under 28 U.S.C. § 2241, not § 1983. He then concluded that any § 2241 claim would be untimely under the one-year statute of limitations because Mr. Barlor "knew of the factual predicate of his habeas claims alleging due process and ex post facto violations at least in 2004 or 2005." R. at 523.

The district court accepted the magistrate judge's recommendation, first noting that, based on Mr. Barlor's objections to the recommendation, the sole issues before it were the due-process, double-jeopardy, and ex-post-facto claims.[3] First, addressing the due-process claim, the court concluded that Mr. Barlor's "transfer to maximum security imprisonment does not present the type of atypical, significant deprivation in which there might conceivably be a liberty interest." R. at 555 (internal quotation marks omitted). "Therefore," the court continued, "his due process claim fails as a matter of law." R. at 555. Sec-

ond, echoing the magistrate judge's recommendation, the court concluded Mr. Barlor's "assignment to maximum security is not 'punishment' for double jeopardy purposes" because classification is "not part of a criminal prosecution." R. at 557. Finally, the court determined that Mr. Barlor's custody assessment did not increase his punishment beyond his original sentences, and thus could not violate the Ex Post Facto Clause. The court noted that Mr. Barlor had "submitted no facts or evidence to indicate that the sentences imposed following his convictions have been increased due to his classification for maximum security confinement." R. at 559.

On appeal, Mr. Barlor argues that, "[b]y punishing [him] multiple times for the same alleged offense the State has thereby violated his due process rights and his Double Jeopardy rights." Opening Br. at 3. He contends the district court did not acknowledge relevant documents supporting his claims, which documents relate to the alleged 2013 battery misconduct. Mr. Barlor re-urges his ex-post-facto claim, insisting that the retroactive application of the 1997 policy to his 1985 and 1991 escapes runs afoul of *Smith v. Scott*, 223 F.3d 1191, 1193 (10th Cir. 2000). He appears to argue that his 2013 reclassification after the alleged battery resulted from the same retroactive application that occurred in 2003 using the 1997 policy.[4]

## II. DISCUSSION

We review de novo the district court's grant of summary judgment, applying the

---

3. In considering evidence outside of the pleadings, the district court converted the defendants' motion to one for summary judgment. *See* R. at 552 (applying the summary-judgment standard to consider documents outside of the complaint, such as a prison report previously requested by the court).

4. Outside of an untimely filing in lieu of a reply brief, *see* discussion *infra* p. 8, Mr. Barlor does not attempt to appeal the district

court's dismissal of his challenge to the execution of his sentence under § 2241. Accordingly, we consider his claims under § 1983 only for declaratory relief and compensatory damages, which, even liberally construed, do not encompass his request for restoration of his earned-time credits. So we do not decide whether reducing Mr. Barlor's earned-time credits violated the Ex Post Facto Clause.

same legal standards as apply in the district court. *See Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). Doing so, "we view the evidence ... in the light most favorable to the nonmoving party." *Schaffer*, 814 F.3d at 1155. We construe Mr. Barlor's pro se pleadings liberally. *See Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). We do not, however, supply additional factual allegations or construct a legal theory on his behalf. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

### A. Documents Considered by the District Court

Mr. Barlor points to a number of documents he attached to his response to the defendants' motion, surmising that the district court did not acknowledge or consider them. The documents concern his 2013 reclassification. He claims that his misconduct conviction for battery was overturned because "due process was not provided," and complains that prison officials tried to suppress evidence of officer involvement in the battery. Opening Br. at 3 (internal quotation marks omitted). He offers nothing more to show that the district court ignored these documents in rendering its judgment. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) (noting that perfunctory allegations of error that fail to frame and develop an issue are insufficient to invoke appellate review).

### B. Effect of the Statute of Limitations

■ Most of Mr. Barlor's claims are barred by statutes of limitation. His due-process claims related to his 1985 and 1991 escapes, and his 2003 reclassification, are time-barred. *See Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999) (noting that in Oklahoma the statute of limitations for § 1983 actions is the two-year period for personal injuries). Because by 2005, when Mr. Barlor filed his federal lawsuit, he knew or should have known of his asserted due-process deprivations arising from his misconduct incidents and reclassification, he can present no set of facts under which any of these claims could be timely. *See id.* Along the same line, to the extent that Mr. Barlor is arguing that his double-jeopardy claim and ex-post-facto claim arise from his placement in maximum security before 2013, those claims are also untimely. *See id.*

### C. Merits

■ This leaves Mr. Barlor's claim that his 2013 placement in maximum security violated the Double Jeopardy and Ex Post Facto Clauses. First, we have held that, "[b]ecause the Double Jeopardy clause only applies to proceedings that are essentially criminal in nature, it is well established that prison disciplinary sanctions ... do not implicate double jeopardy protections." *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (citation and internal quotation marks omitted). By definition, "disciplinary sanctions" include Mr. Barlor's security classification.

■ Second, *Smith* does not aid Mr. Barlor's claim that increasing his security points violated the Ex Post Facto Clause. *Smith* addressed the reduction of earned-time credits, which the ODOC had rescinded from Mr. Smith. 223 F.3d at 1193. To be sure, policies or laws affecting earned-time credits are actionable under the Ex Post Facto Clause, because they can increase a prisoner's sentence. *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 507–09, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (applying the clause only to laws that increase the punishment for a criminal offense, not laws that create "only the most speculative and attenuated risk of increasing the measure of punishment"). But Mr.

Barlor has abandoned any challenge to the district court's determination on the restoration of his earned-time credits, alleging only that his increase in security points has increased his security status, not his sentence. We note that he does not mention earned-time credits in his opening brief, much less allege that his earned-time credits were rescinded. And we have held "the Ex Post Facto Clause does not bar a prison from changing the regulations governing their internal classification of prisoners." *Dyke v. Meachum*, 785 F.2d 267, 268 (10th Cir. 1986). We therefore glean no increase in his sentence from the change in his security points, and thus no violation of the Ex Post Facto Clause.

### D. Habeas Petition

As a final matter, in lieu of a reply brief, Mr. Barlor filed a "Brief in Support of Petition for Writ of Habeas Corpus." In it, he raises a number of issues not otherwise raised in this appeal. To the extent he intends this to be his reply brief, we "decline to consider arguments raised for the first time in a reply brief." *United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996). Instead, we construe this filing as a misdirected § 2241 petition not properly filed in this court. We order the Clerk of Court to transfer the petition to the district court for adjudication under 28 U.S.C. § 1631.

### III. CONCLUSION

Accordingly, we affirm the district court's decision and transfer Mr. Barlor's habeas petition to the district court under 28 U.S.C. § 1631. We also grant Mr. Barlor's request to proceed without prepayment of fees. We remind Mr. Barlor that he remains obligated to pay the entire filing fee.