**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VINCENT FORBES,

    Plaintiff - Appellant,

v.

KINDER MORGAN, INC.,

    Defendant - Appellee.

No. 16-3081
(D.C. No. 6:14-CV-01228-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.
_____

    Vincent Forbes appeals from a summary judgment entered against him in this employment discrimination case. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

    The parties are familiar with the facts and procedural history in this case — the district judge detailed them, *see Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182, 1186–92 (D. Kan. 2016) — so we discuss only the material necessary to understand the district court's decision. Forbes, 57, was employed as a plant operator

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

at Kinder's Elkhart, Kansas, facility. On March 7, 2013, when he left the facility and went to his car, he found an "angle iron" placed near one of his tires. Suspecting this was the handiwork of Norman Rogers, a co-worker known for practical jokes, Forbes raised the issue with his immediate supervisor before going home for the night. Upon his return to the facility, Rogers attempted to apologize for his "joke" and accounts differ as to what happened next. It is undisputed, however, that Forbes, incensed by either Rogers' specific taunts or pranks in general, punched Rogers in the face.

Matt Mask, the facility's divisional supervisor, conducted an investigation into these events. He ultimately found Forbes to have violated the company's "Violence in the Workplace" policy, which prohibits acts or threats of violence. *See* Aplt. App. at 161–62 (contained in an overarching policy entitled "The Workplace"). As a result, he terminated Forbes' employment. Rogers, for his part, was suspended without pay for a day. Forbes brought this suit alleging, *inter alia*, he was discriminated against in violation of the Age Discrimination in Employment Act (ADEA).

After discovery, Kinder moved for summary judgment. ADEA claims are evaluated using the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); neither party disputed the other's initial burden under this analysis. Rather, "the parties dispute whether Forbes shoulders the final burden: proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

2

discrimination." *Forbes*, 172 F. Supp. 3d at 1193 (alterations and internal quotation marks omitted). As evidence of pretext, Forbes presented three arguments: (1) Kinder "altered its company policy after the fact to justify firing him;" (2) Kinder "treated him more severely" than Rogers; and (3) "a reasonable jury cannot square" Mask's explanation for termination with what really happened between him and Rogers. *Id*. The judge rejected these arguments.

First, the judge found no alteration in company policy after Forbes' termination. Both parties proffered competing versions of "The Workplace" containing a "Violence in the Workplace" section that was located in different parts of the overall policy.[1] These sections were "identically worded" in the judge's estimation; he concluded finding pretext here would be to "adopt speculation." *Id*. at 1194. In any event, the court noted "circumstantial evidence of bias" is not probative of pretext without a connection to the decision to terminate, and Forbes offered "only the policies' dates." *Id*.

Turning to Forbes' argument regarding Rogers' disparate discipline, the judge considered whether Forbes and Rogers were similarly situated. He noted how no Kinder policy "required Mask to view Forbes['] and Rogers' actions as equally unacceptable." *Id*. at 1196. "In his discretion, Mask considered harming a coworker more serious than harming a coworker's property," which the court found was within

---

[1] The following text appears in both versions of "The Workplace" from August 1, 2011, and March 8, 2013: "The Companies prohibit . . . [a]ny act or threat of violence made by an employee against another including verbal, non-verbal, written, or physical threats." *Compare* Supp. App. Vol. 3 at 393 (2013), *with* Supp. App. Vol. 4 at 600-01 (2011).

his "managerial discretion" and "judgment in determining how best to regulate [his] employees' (mis)conduct." *Id*. (internal quotation marks omitted). The judge said, "[w]ithout evidence that Forbes and Rogers violated workplace rules of comparable seriousness," it could not "consider their disparate discipline unlawful." *Id*. (internal quotation marks omitted).

Finally, he determined Mask's conception of what occurred not to be flawed because "Forbes almost entirely point[ed] to minor inconsistencies." *Id*. In his view, the "only major inconsistency argued by Forbes" was "Mask's view that Forbes was the situation's aggressor." *Id*. at 1197. Even though Forbes offered only his version of the fight's details, the judge allowed as how Forbes might possibly be right and "a decisionmaker more omnipotent than Mask might agree with Forbes' account," but he reasoned an employer need not "make a factually doubt-free decision to avoid an inference of pretext." *Id*. "Evidence excludes an inference of pretext if it shows a good faith decision based on the facts presented." *Id*. (citing *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)). Given that all three "generally unverifiable narratives" confirmed that Forbes hit Rogers, the judge decided Mask was justified in concluding Rogers "was not the aggressor but the recipient of the aggression." *Id*. (internal quotation marks omitted). "None of the evidence shows that Mask settled on a particular narrative because of Forbes' age," making this a "business judgment" courts may not second-guess. *Id*. (internal quotation marks omitted).

4

We review de novo the grant of summary judgment, applying the same legal standard as the district court under Federal Rule of Civil Procedure 56(a). *See Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). In applying this standard, "we view the evidence . . . in the light most favorable to the nonmoving party." *Id*. (internal quotation marks omitted). Having undertaken a thorough review of the parties' briefs, the record, and the applicable law, we conclude Forbes has not shown reversible error in this case.

Here, Forbes mostly reiterates the points he raised before the district judge in support of his overarching argument: Kinder's age-neutral explanation for his termination was pretextual because (1) Mask's decision was based on inaccurate information; (2) Rogers was punished differently; and (3) there was no anti-violence provision in company policy that was provided to Forbes. Specifically, Forbes argues Mask was wrong about several facts surrounding the altercation, such as whether Forbes was still angry when he returned to work the day after the prank. But none of his points undermine the judge's determination regarding Mask's exercise of business judgment to terminate Forbes for cause because none are relevant to Mask's ultimate finding that Forbes broke a coworker's nose and none call into question Mask's good faith. Forbes next contends he had a right to self-defense and the disparate punishments issued between him and Rogers stretch too far any deference we owe to business judgment. Kinder's anti-violence policy, however, put Forbes on notice that "discipline, up to and including immediate termination of employment," was on the table for violating its terms, which preserve managerial discretion. *See*

5

Aplt. App. at 161. As the judge noted, there was no Kinder policy requiring equal treatment of employee violence situations. Mask was well within his business judgment to find Forbes' actions more serious than Rogers' actions. Finally, sidestepping the judge's conclusion that the anti-violence provision was present in all relevant versions of "The Workplace," Forbes argues a "run, hide and fight clause" in another policy recognizes his right to defend himself. Opening Br. at 26. Though the relevant anti-violence language from these provisions did eventually end up in a provision entitled "Violence and Security in the Workplace" that indeed contemplates self-defense, Forbes' argument is still meritless because this provision was not enacted until July 1, 2014, over a year after the fight. *See* Supp. App. Vol. 4 at 569–71.

We agree with the district judge — while Kinder's decision may have been unwise, unfair, or incorrect, no evidence created a genuine issue of fact "concerning whether Mask made a good faith, business-oriented decision." *Forbes*, 172 F. Supp. 3d at 1198. As much as Forbes might want, this is not a case about a violation of the terms of an express or implied employment contract. Forbes is required to prove Kinder's firing decision was a pretext for age discrimination. Even if Kinder violated its own policies, its decision is untethered from and unconnected to both Forbes' allegations of discrimination and of pretext.

6

We affirm the judgment of the district court for substantially the same reasons stated in its published order granting Kinder's motion for summary judgment.

Entered for the Court


Terrence L. O'Brien
Circuit Judge