FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 7, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CHRISTOPHER A. VANHORN,

    Plaintiff - Appellant,

v.

SALVATION ARMY; BLANCHE
RIDING; KELLY F. KELLER; MEGAN
BROWN, in her individual and official
capacity; GREGORY BARNETT, in his
individual and official capacity; TANNER
EDDINGS, in his individual and official
capacity; CHAD HODGE, in his individual
and official capacity; DAVID MARTIN, in
his individual and official capacity; KEITH
DRILL, in his individual and official
capacity; CITY OF MISSION, KANSAS,

    Defendants - Appellees.

No. 24-3126
(D.C. No. 2:23-CV-02009-DDC-ADM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appellant Christopher VanHorn was involved in an altercation at a Salvation Army store that led to state court convictions of disorderly conduct and criminal trespass. Based on these events, Mr. VanHorn filed a federal lawsuit against numerous defendants alleging claims under federal civil rights laws and state law.[1] The district court dismissed the federal claims without prejudice and declined to exercise supplemental jurisdiction over the state law claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background[2]

### A. State Court Proceedings

In January 2022, Mr. VanHorn entered a Salvation Army store in Mission, Kansas. One of the store employees, Appellee Kelly Keller, asked Mr. VanHorn to wear a face mask. Mr. VanHorn refused, saying that Ms. Keller could not force him to wear a mask. He then took out his cell phone and started video recording.

Because Mr. VanHorn declined to put on a mask, Ms. Keller asked him to leave. She explained it was the store's policy that those inside must wear a mask. Mr. VanHorn did not leave; he engaged with other patrons in the store and continued recording. He asked Ms. Keller why he could not shop at the store, and she

---

[1] Because Mr. VanHorn is a pro se litigant, we construe his pleadings liberally but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] We take these facts from the Amended Complaint, *see* R. vol. II at 127-67, and the district court order's undisputed recitation*, see id.* at 397-403. We cite the district court order in the appellate record, *id.*, but it is also available at *VanHorn v. Salvation Army*, No. 23-2009, 2024 WL 1256245 (D. Kan. Mar. 25, 2024).

2

responded, "because you don't have a mask on sir." R. vol. II at 398 (internal quotation marks omitted). Ms. Keller then instructed Appellee Blanche Riding, the store manager, to call the police. Ms. Riding made the call while Mr. VanHorn continued to have conversations with other store patrons. Ultimately, Mr. VanHorn left the store.

On his way out, Mr. VanHorn encountered City of Mission police officers. Appellee Officer Megan Brown asked Mr. VanHorn if he was the person inside the Salvation Army store who refused to wear a mask. Mr. VanHorn confirmed he was and said he was leaving. He then asked if he was being detained. Appellee Officer Gregory Barnett said yes, for possibly trespassing. Mr. VanHorn asked how that could be when he had left a public store. Officer Barnett told him that he did not leave when asked. He then told Mr. VanHorn that he was not free to leave until Officer Barnett spoke with the store employees.

Appellee Officer Tanner Eddings arrived and approached the group. Officer Eddings told Mr. VanHorn he would have to go to jail if the Salvation Army pursued trespassing charges against him. Officer Eddings then went inside the store, where Ms. Keller, Ms. Riding, and an unknown patron told him Mr. VanHorn had been asked to leave at least ten times. Officer Eddings told Ms. Keller that they could take Mr. VanHorn to jail for disorderly conduct and asked if Ms. Keller wanted to pursue trespassing charges against him. Ms. Keller responded, "[Y]ep, get him out of here." R. vol. II at 400 (internal quotation marks omitted).

Officer Eddings directed Officer Brown to arrest Mr. VanHorn for disorderly conduct and trespassing.  Officer Brown did so.  Appellee Officer Chad Hodge arrived, assessed the situation, and determined Mr. VanHorn should be held in jail for 18 hours.  Mr. VanHorn tried to show the officers the video on his phone, but they refused to watch the footage and took him to the county jail.

In February 2022, at the City of Mission Municipal Court, Appellee Judge Keith Drill arraigned Mr. VanHorn.  Following the arraignment, Appellee David Martin, a City of Mission Prosecutor, pursued disorderly conduct and criminal trespassing charges against him.  At the bench trial, the Salvation Army employees and the City of Mission officers testified.  Judge Drill found Mr. VanHorn guilty of criminal trespass and disorderly conduct.

Mr. VanHorn timely appealed the convictions to the Johnson County district court.  He argued he was wrongly convicted because he never received a copy of his charging offenses or the complaint.  He also argued the Municipal Court improperly arraigned him twice.  On August 21, 2023, the Johnson County district court upheld Mr. VanHorn's convictions.

B. *Federal Proceedings*

Mr. VanHorn filed the federal lawsuit underlying this appeal asserting federal and state law claims against ten defendants (the Defendants).[3]  In his Amended

---

[3] Defendants are the Salvation Army store, Ms. Riding, and Ms. Keller (collectively, the Salvation Army Defendants); Officer Brown, Officer Barnett, Officer Eddings, and Officer Hodge (collectively, the Mission Officers); and

Complaint, Mr. VanHorn asserts thirteen claims—ten counts under federal law, including § 1985(3), § 1983, and the Declaratory Judgment Act; and three counts under state law. The Salvation Army Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), and the Mission Defendants filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). The district court granted both motions, resolved all federal claims without prejudice, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the case.

This timely appeal followed.

## II.    Discussion

Mr. VanHorn urges reversal on four grounds. *First*, the district court should have exercised diversity jurisdiction over the state law claims. *Second*, the district court improperly treated the Mission Defendants' Rule 12(c) motion as one under Rule 12(b)(6). *Third*, the district court erred in granting the Salvation Army Defendants' Rule 12(b)(6) motion on the § 1983 and § 1985 claims. And *fourth*, the district court erred by dismissing a § 1983 due process claim against the Mission Defendants. We discuss each in turn and discern no error.

### A. Diversity Jurisdiction

The Amended Complaint asserted federal question jurisdiction, supplemental jurisdiction, and diversity jurisdiction. After dismissing the federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims.

---

Prosecutor Martin, Judge Drill, and the City of Mission, Kansas (collectively, and together with the Mission Officers, the Mission Defendants).

As we have explained, the decision to refuse supplemental jurisdiction under these circumstances was within the district court's discretion. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (internal quotation marks omitted)). Mr. VanHorn does not argue otherwise. Still, he insists the district court had an independent obligation to hear the state claims because he pleaded diversity jurisdiction. We disagree.

"We review issues of subject matter jurisdiction de novo." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1305 (10th Cir. 2003). Federal courts have a general obligation to adjudicate claims over which they have original jurisdiction. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989) ("Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." (citing cases)), *abrogated in part on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Here, the district court did not address diversity jurisdiction. And for good reason. Under 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." To establish the amount in controversy, a plaintiff must allege facts showing damages that bear a reasonable relation to the jurisdictional minimum. *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000). The Amended Complaint states no facts sufficient to support diversity jurisdiction as an

6

independent basis for proceeding in federal court on the state law claims. For example, Mr. VanHorn does not allege a specific amount in controversy on the state law claims. *Id.* at 1182 (observing that "[a]n open-ended prayer for recovery . . . is not an allegation that diversity jurisdiction exists or that the amount in controversy exceeds" the minimum jurisdiction floor). To be sure, Mr. VanHorn makes a conclusory assertion that the amount in controversy is above $75,000. *See* R. vol. II at 132, ¶ 30. And he requests "actual, general, special and compensatory damages," as well as "punitive damages in an amount to be determined by the jury," *id.* at 236, 239, and 240. But he does not allege sufficient facts to establish recoverable damages that exceed $75,000 on the state law claims. *See Adams*, 225 F.3d at 1183.

Under these circumstances, we discern no error in the district court's decision to dismiss the state law claims without prejudice.

### B. Rule 12(c) Motion

Mr. VanHorn next challenges the district court's decision to treat the Mission Defendants' Rule 12(c) motion as one under Rule 12(b)(6) and dismiss the case. Whether the district court erred by treating a Rule 12(c) motion as a Rule 12(b)(6) motion is an issue of law we review de novo. *See Chieftain Royalty Co. v. SM Energy Co.*, 100 F. 4th 1147, 1155 (10th Cir. 2024) (reviewing the district court's interpretation of the Federal Rules of Civil Procedure de novo); *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1270 n.12 (10th Cir. 2016*)* ("[W]e look beyond the form of the motion to the substance of the relief requested." (internal quotation marks omitted)).

Ordinarily, a party files a Rule 12(b)(6) motion prior to filing an answer and a Rule 12(c) motion once the pleadings have closed. When a case involves more than one defendant, "the pleadings are not closed until all defendants file an answer." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 809 n.3 (10th Cir. 2021) (internal quotation marks omitted). Thus, a plain reading of Rule 12(c) suggests it is generally unavailable until all defendants in an action have filed an answer to the complaint. Fed. R. Civ. P. 12(c). But "[a] motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

Here, the district court determined that it would be appropriate to treat the Rule 12(c) motion as a Rule 12(b)(6) motion because (i) the Salvation Army's answer, if filed, would not affect pleading closure on the claims against the Mission Defendants; (ii) the same standard applies to a motion for judgment on the pleadings as a motion to dismiss; and (iii) a decision that addresses the substance of the Rule 12(c) motion would ensure a "just, speedy, and inexpensive determination" of the case, Fed. R. Civ. P. 1.

Mr. VanHorn argues the district court should have directed the Mission Defendants to refile the Rule 12(c) motion after the pleadings had closed. Defendants contend it was more efficient to address both motions at the same time given the motions are analyzed under the same standard. We agree with Defendants.

On the record before us, the distinction between a Rule 12(b)(6) motion and Rule 12(c) motion resides in form and not function. *See Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1229 (10th Cir. 2021) (explaining a motion gets judged by "its substance rather than according to its form or label" (quoting 5 Wright & Miller, Federal Practice and Procedure § 1286 (3d ed. 2004))). Although the pleadings had not closed, functionally the different defendants filed motions asserting Mr. VanHorn failed to state a claim. Under these circumstances, the distinction between Rule 12(b)(6) and rule 12(c) was without a difference: the Salvation Army's answer would not affect pleading closure on the claims against the Mission Defendants and the same standard applied to both motions. Although Rule 12(c) technically directs a party to file the motion after the pleadings have closed, we conclude any technical violation in this case does not amount to reversible error. *See Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 704 (10th Cir. 2013) ("[W]hether the district court dismissed the complaint based on a motion under Rule 12(b)(6) or Rule 12(c) makes no difference for purposes of our review. Therefore, any procedural error that may have been committed would be harmless and does not prevent us from reaching the merits of the district court's decision."); 28 U.S.C. § 2111 ("On the hearing of any appeal . . . , the court shall give judgment after an examination of the record *without regard to errors or defects which do not affect the substantial rights of the* parties.") (emphasis added).

9

*C. The Federal Law Claims Against the Salvation Army Defendants*

Mr. VanHorn next argues the district court erred by dismissing the federal claims under § 1985(3), § 1983, and the Declaratory Judgment Act against the Salvation Army Defendants for failure to state a claim under Rule 12(b)(6).[4] We review de novo the district court's dismissal under Rule 12(b)(6). *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130 (10th Cir. 2024). We "must take as true all well-pleaded facts, as distinguished from conclusory allegations, [and] view all reasonable inferences in favor of the nonmoving party," but "a complaint cannot rely on labels or conclusory allegations—a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1130-31 (internal quotation marks and brackets omitted).

Mr. VanHorn appears to argue the district court erred in ruling the Salvation Army Defendants and the Mission Officers did not act jointly for purposes of the § 1983 and § 1985(3) claims against the Salvation Army Defendants. Mr. VanHorn asserts they were acting under color of state law to violate his constitutional rights when they called the Mission Officers and instructed them to arrest Mr. VanHorn. We are not persuaded.

---

[4] Mr. VanHorn's Opening Brief does not challenge the district court's application of qualified immunity to the Mission Officers on these claims, nor does he challenge dismissal of any of the official capacity claims, thus we deem them waived. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

i.  Section 1985(3) Claim.

Mr. VanHorn argues the Salvation Army Defendants conspired with the Mission Officers to deprive him of "the equal enjoyment, access, and use of public accommodation, as protected by the . . . the Civil Rights Act of 1964[,]" in violation of § 1985(3).  R. vol. II at 186, ¶ 367.

> Under 42 U.S.C. § 1985(3),
>
> [i]f two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . or cause to be done, any act in furtherance of the object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages[.]

A § 1985(3) claim requires a party show:  "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  This type of civil rights claim applies specifically "to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Id.* (internal quotation marks omitted).  A conspiracy exists when two or more persons act in concert, established by evidence of "a meeting of the minds or agreement" between or among the parties.  *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230-31 (10th Cir. 1990).  A plausible conspiracy claim requires more than "an allegation of parallel conduct and a bare assertion of conspiracy."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

As the district court correctly reasoned, Mr. VanHorn "never alleges facts which could permit a reasonable finding of joint action between any of the Salvation Army Defendants and the [Mission Defendants], or another party possessing state power." R. vol. II at 409. Mr. VanHorn resists this conclusion. He says he alleged the Salvation Army Defendants and Mission Officers conspired to "deprive[] [him] of the right to services and . . . equal enjoyment, use, and access to a place of public accommodation" by creating two classes—the masked and unmasked—and denying the unmasked services. *Id.* at 184. He also argues the Salvation Army Defendants and Mission Officers conspired "to arrest and imprison [him] for invoking his right to choose his own medical treatment." *Id.* at 185. These allegations do not support a plausible inference of conspiracy. "A claim is plausible when the complaint contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (internal quotation marks omitted). By calling in the Mission Officers, the Salvation Army Defendants did not engage in joint action under color of state law. *See Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985.").

We affirm the district court's conclusion that Mr. VanHorn failed to allege a valid § 1985(3) claim against the Salvation Army Defendants.

ii.  Section 1983 Claim.

Mr. VanHorn also asserted a claim under 42 U.S.C. § 1983 against the Salvation Army Defendants and alleged they engaged in joint action with the Mission Officers to violate his Fourth Amendment rights.  Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,]" deprives someone of a federal constitutional or statutory right.  42 U.S.C. § 1983.  "The two elements of a Section 1983 claim are (1) deprivation of a federally protected right by (2) an actor acting under color of state law."  *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).  Under some circumstances, conduct by a private party can qualify as state action if the conduct is "fairly attributable to the [s]tate."  *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (internal quotation marks omitted).  Two conditions must be met for private conduct to be fairly attributable to the state:

> First, the deprivation must be caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the [s]tate or by a person for whom the [s]tate is responsible. Second, the private party must have acted together with or . . . obtained significant aid from state officials or engaged in conduct otherwise chargeable to the [s]tate.

*Id.* (internal quotation marks omitted).  Thus, to invoke the conduct of a private party to satisfy the state action requirement, a plaintiff must plead facts to show that the private party and the state official had a "specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action."  *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995).

13

The district court concluded Mr. VanHorn did not allege sufficient facts to show the Salvation Army Defendants engaged in joint action with the Mission Officers to violate his civil rights.  As the district court observed, "[t]he closest [Mr. VanHorn] comes to pleading a fact capable of supporting a finding of joint action is his assertion that [Ms.] Keller . . . instructed another Salvation Army Defendant ([Ms.] Riding) to 'call the police.'"  R. vol. II at 406.  But simply availing oneself of state procedure does not amount to state action, as the district court correctly recognized.

Urging reversal, Mr. VanHorn insists he plausibly alleged joint action.  He points to a number of allegations in the Amended Complaint in support.  *See, e.g.*, Opening Br. at 37 (stating the Salvation Army Defendants "acted with a 'specific goal' to violate [his] constitutional rights," namely, "to have [him] arrested and imprisoned without factual evidence of a crime" (citing Am. Compl. at ¶¶ 597-605, R. vol. II at 234-35)); *id.* (contending he had left the store when he encountered the Mission Officers, but "instead of allowing him to leave they planned the arrest and imprisonment absent probable cause" (citing Am. Compl. at ¶ 623, R. vol. II at 238)); *id.* at 39 (alleging that the Salvation Army Defendants "instigated, assisted, directed and encouraged" the Mission Officers to arrest and jail him (citing Am. Compl. at ¶¶ 620-627, R. vol. II at 237-38)).

Assuming the truth of these allegations, as we must at this stage of the proceedings, Mr. VanHorn cannot plausibly show the Salvation Army Defendants engaged in joint action with the Mission Officers.  Mr. VanHorn makes a number of

conclusory statements that the parties were acting jointly. But we do not "accept '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements[.]'" *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."). Nor can the Salvation Army Defendants be considered willful participants in state action by simply availing themselves of state procedure for calling the Mission Officers. *See Pino*, 75 F.3d at 1465.

We thus affirm the district court's conclusion that Mr. VanHorn did not allege sufficient facts to show the Salvation Army Defendants engaged in joint action with the Mission Officers.

### iii.    Declaratory Judgment Act Claim.

Mr. VanHorn's last federal claim against the Salvation Army Defendants requests a declaratory judgment on the false arrest claim. The Declaratory Judgment Act is not an independent cause of action. *See Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671-74 (1950). To obtain a declaratory judgment, a party must also assert a valid claim. *See id.* at 672.

Mr. VanHorn asserts the Declaratory Judgment Act claim was related to the state law claims. He makes no other independent argument for reversal. Because we have rejected his argument that the district court should have exercised diversity

jurisdiction over the state law claims, we discern no error as to the district court's decision to decline Mr. VanHorn's request for a declaratory judgment.

### D. Section 1983 Due Process Claim

Finally, Mr. VanHorn urges reversal because he contends the district court erroneously dismissed his Fourteenth Amendment procedural due process claim. In his view, the Mission Municipal court was without jurisdiction to convict him because no criminal complaint was ever properly filed.

Mr. VanHorn contends the district court's application of abstention under *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), is inapplicable. He also argues that Judge Drill and Prosecutor Martin are not entitled to absolute immunity on this claim. Again, we disagree.

We need not analyze whether *Parratt* applies because absolute immunity does. Judges are generally immune from suit unless "(1) [ ] the act is not taken in the judge's judicial capacity, and (2) [ ] the act, though judicial in nature, is taken in the complete absence of all jurisdiction." *Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008) (brackets and internal quotation marks omitted). A prosecutor also has absolute immunity from suit "when functioning within the scope of his duties in initiating and pursuing a criminal prosecution." *Chilcoat.*, 41 F.4th at 1209 (internal quotation marks omitted). "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of

16

whether probable cause exists, and their determination of what information to show the court." *Id.* (internal quotation marks omitted). Absolute immunity does not exist, however, "when a prosecutor functions in the role of an administrator or investigative officer rather than that of advocate." *Id.* (internal quotation marks omitted).

Mr. VanHorn does not argue Judge Drill acted outside his judicial capacity. Nor does he argue Prosecutor Martin acted outside his prosecutorial capacity. Holding an arraignment and prosecuting a case is conduct that fits squarely within the respective judicial and prosecutorial capacities shielded by absolute immunity. Mr. VanHorn advances no contrary availing argument.

## Conclusion

We affirm the dismissal of Mr. VanHorn's claims. We also deny Mr. VanHorn's pending motions with this court.[5]

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[5] Mr. VanHorn has five pending motions before this court: (1) Appellant's Notice of Fraud to the 10th Circuit and Motion for Judical [sic] Notice of '60(b) Motion' and 'Notice of Fraud on the Court/Fraud on the Appellant' [ECF Dkt. No. 26]; (2) Appellant's Motion to Supplement the Record with Materials Demonstrating Fraud Upon the Court Pursuant to FRAP 10(e) [ECF Dkt. No. 28]; (3) Plaintiff's Motion to Stay Pending the Resolution of 60(b) Motion [ECF Dkt. No. 29]; (4) Motion to Expedite Ruling on Stay Motion [ECF Dkt. No. 33]; and (5) Appellant's Motion for Limited Remand [ECF Dkt. No. 36]. These motions are inextricably linked to the Rule 60(b) motion that was pending in the district court until recently. On July 24, 2025, Mr. VanHorn appealed the district court's ruling on the Rule 60(b) motion (appeal No. 25-3126).